JOSEPH R. BASSETT, Respondent, *v.* PAUL N. SPOFFORD et al., Appellants.

By the larcenous taking of chattels, the owner is not divested of his property, and a transfer to a *bona fide* purchaser does not impair his rights. The owner may follow and reclaim them wherever he can find them, and a carrier or other bailee can stand in no better situation than a purchaser who has received them in good faith and for full value. When the goods have been stolen, no question of negligence or estoppel of the owner thereby can arise.

Where goods were sold by the plaintiff at Boston, to be delivered at New York, and paid for on delivery, and were forwarded, and the clerk of the plaintiffs being sent on to New York with the carriers' receipt, with instructions to deliver the goods on being paid for them; and the pretended purchaser having obtained from the clerk the receipt merely "for the purpose of examining the goods," and, by its means, got possession of the goods, removed them on board the defendant's steamer bound to Havana, and obtained from the defendant, before any notice to him of the fraud, bills of lading thereof,—*Held*, that the defendant was bound to deliver the goods to the plaintiff on demand, and on his refusal was liable for their value.

*Quere*, whether, if at the time of the demand, the goods had been loaded in the ship so as to be difficult of access, and their removal and delivery to the plaintiff would have caused expense, and necessarily delayed the voyage, and the defendant had offered to restore the goods on the return of the ship, these facts would have affected the question.

(Argued April 13th; decided April 25th, 1871.)

APPEAL from the General Term of the New York Common Pleas.

The action was replevin for four cases of shoes, which came to the possession of the defendant's testator from one Careras, to be carried and conveyed on steamer from New York to Havana, consigned to one Oliver. At the time the plaintiff, by his agent, notified the testator and the master and officers of the steamer of his claim, and demanded a delivery of the property, the cases were stowed in the hold of the vessel and difficult of access, and incapable of delivery, except with considerable labor and at some expense. The delivery would have delayed the departure of the vessel, which was about to commence her voyage. There was evidence tending to show that bills of lading for the property had been issued in the usual form, before any notice of the plaintiff's claim. The plaintiff claimed as owner. He was a resident of Boston, and contracted to sell four cases of shoes to Careras, to be delivered in New York, and paid for on delivery. The shoes were forwarded to New York by railroad and steamboat, the plaintiff taking a receipt for their carriage and giving the same to a clerk whom he sent with the goods to New York, with directions to deliver the goods to the purchaser

on receiving the pay therefor. On his arrival in New York, the clerk called on Careras, and informed him of the arrival of the goods and that he was ready to deliver them on receipt of the purchase price. He was informed by Careras, that he would be prepared to pay at a later hour of the day, but as the clerk was leaving Careras remarked that he would like to examine the goods, and the bill of lading or receipt was given him " for the purpose of examining the goods." The clerk called at one o'clock, the time appointed, for the payment of the money, and was promised it at three o'clock of the same day. On calling at the last named hour, the payment was again deferred, and he then went to look after the goods and found they had been removed. They were traced to the testator's ship, to which they had been taken by Careras, and put on board for transportation to Havana, consigned to one Oliver. The plaintiff demanded his goods, and upon their non-delivery this action was brought.

At the close of the trial the plaintiff asked the court to direct a verdict for the plaintiff, on the grounds: 1st. That the goods were feloniously obtained by Careras, and 2d. That there was no evidence of a delivery of the bill of lading, and a verdict was ordered as requested, to which the defendant excepted. The judgment entered upon the verdict was affirmed by the General Term of the Common Pleas of New York city, and from the latter judgment the defendant has appealed to this court.

*Erastus Cooke*, for the appellants. The defendants received the goods in the ordinary course of business; they had shipped the goods and were *bona fide* purchasers within the definition of *Root* v. *French* (113 Wend., 572). The carrier represents the rights of the consignee. (*Fitzhugh* v. *Winan*, 9 N. Y., 562.) The delivery of the bill of lading was a symbolical delivery o the goods. (*Dows* v. *Greene*, 24 N. Y., 643, 644; *Lukbaum* v. *Mason*, 2 T. R., 63, 1 Smith's L. Cas., 848.) A party who buys or makes advances *bona fide* on the faith of an indorsement of a bill of lading, by a

fraudulent vendee, will acquire a good title against the original vendor. (*Dows* v. *Rush*, 28 Barb., 157; *Dows* v. *Greene*, 32 Barb., 493; *Keyser* v. *Harbeck*, 3 Duer., 391; *Rowley* v. *Biglow*, 12 Pick., 387.

*Richard O'Gorman*, for the respondent. To constitute a delivery there must not only be the act itself necessary to effect it, but, to render it available, it must be an intentional act; must receive the assent of the mind that it is done for that purpose. (*Lester* v. *McDowell*, 18 Penn., 91.) The owner can follow his stolen property, and recover it in the hands of any person, however innocent. (*Saltus* v. *Everett*, 20 Wend., 282.)

When property is pledged without authority from the owner, the pledgee has no lien against the owner. (*Duell* v. *Cadlipp*, 1 Hill, 166; *Cheeseman* v. *Excell*, 4 Law. & Eq., 438.) A *bona fide* vendor of stolen goods can give no title, and trover may be brought against the purchaser without a demand and refusal. (*Rogers* v. *Hine*, 1 Cali., 427; *Lee* v. *Robinson*, 37 Law. & Eq., 406; *Curtis* v. *Crane*, 32 Vermont, 232; *Newkirk* v. *Dalton*, 17 Ill., 413.) The same rule exists as to sales by bailee at will. (*Baily* v. *Colby*, 34 N. Y., 29; *Lovejoy* v. *Jones*, 10 Foster, 161; *Crocker* v. *Gullifer*, 44 Maine, 491.) Unauthorized sales by carrier. (*Bailey* v. *Shaw*, 4 Foster, 297; *Saltus* v. *Everett*, 20 Wend., 267; *Blossom* v. *Champion*, 37 Barb., 554; S. C. 28 Barb., 217.) If this was a conditional sale, vendee could not give title against the original owner. (*Herring* v. *Hoppock*, 15 N. Y., 409; *Herring* v. *Willard*, 5 Sand, 418; *Whipple* v. *Gilpatrick*, 1 Appleton, 427.) On a cash sale, payment and delivery are simultaneous acts, and title to the property does not pass until payment, unless waived; and no evidence of waiver is shown. (*Chapman* v. *Lathrop*, 6 Cow., 610; *Convey* v. *Bush*, 4 Barb., 564; *Levin* v. *Smith*, 1 Denio, 571; *Mowry* v. *Walsh*, 8 Cow., 242; *Smith* v. *Lynes*, 1 Seld., 41.) The plaintiff need not tender a bond of indemnity. (*Thompson* v. *Trail*, 6 B. & C. (13 E. C. L. R.), 36; *Stevens* v. *Bost R.*

*R. Co.,* 8 Gray, 262.) The pendency of the replevin suit was a complete defence to any claim by the shipper, against the carrier. (*States* v. *Davis,* 1 Black., 101; *Van Winkle* v. *N. J. Mail Steam Ship Co.,* 37 Barb., 122; *Wilson* v. *Anderson,* 1 B. & Adolph, 122; 2 Hilliard on Torts (1st ed.) 248, 254.)

ALLEN, J. By the larcenous taking of chattels the owner is not divested of his property, and a transfer to a purchaser does not impair the right of the true owner. A purchase of stolen goods either directly from the thief or from any other person, although in the ordinary course of trade and in good faith, will not give a title as against the owner. In the case of a felonious taking of goods, the owner may follow and reclaim them wherever he may find them. A carrier or other bailee can stand in no better situation than a purchaser who has received them in good faith on a purchase for their full value.

A larceny has been defined as "the felonious taking the property of another, without his consent and against his will, with intent to convert it to the use of the taker" (Hammond's Case, 2 Leach, 1089), or "the wrongful or fraudulent taking and carrying away by any person of the personal goods of another, with a felonious intent to convert them to his (the taker's) own use and make them his own property without the consent of the owner." (2 East, P. C., 553; 2 Russ on Crimes, 1; *Mowrey* v. *Walsh,* 8 Cow., 238.)

The fraudulent and wrongful taking being proved with the felonious intent, the *animo furandi,* the only question remaining in any case is whether the taking was with the consent of the owner; for if so, although the consent was obtained by gross fraud, there is no larceny. But the consent must be to part with the property, and not the naked possession for a special purpose. If the owner does not intend or consent to part with his property, then the taking and conversion of it with a felonious intent by one having possession of it, as the property of the owner and for a special purpose is larceny. If it

appear that although there is a delivery by the owner in fact, yet there is no change of property nor of legal possession, but the legal possession still remains exclusively in the owner, larceny may be committed as if no such delivery had been made. (*Mowrey* v. *Walsh, supra,* and cases cited; and 2 Russ. on Crimes, 22; *Lewis* v. *Commonwealth,* 15 S. & R., 93; *Commonwealth* v. *James,* 1 Pick., 375; *Cary* v. *Hotaling,* 1 Hill, 311.)   The general owner of personal property holds the constructive possession and may maintain trespass, though the actual possession be in another; and one who obtains the bailment of goods, or the possession for a special purpose, fraudulently intending to deprive the owner of his property, may be convicted of larceny.   But if the owner intends to part with the property and delivers the possession, there can be no larceny, although fraudulent means have been used to induce him to part with the goods.   The delivery of the receipt to Careras was to enable him to examine the goods before paying for them, and for no other purpose; and with the consent of the plaintiff he had access to, and possession of the goods for this special purpose.   The sale of the goods was for cash, to be paid on delivery; the condition was never waived, and there was no absolute delivery of the goods or of the receipt for them with intent to part with the property, except upon the payment of the purchase-price.   Had the ship owner received from  Careras the original receipt or bill of lading for the goods, and dealt with him on the faith of it, as evidence of ownership, a different question might have arisen.   But Careras had availed himself of that document to possess himself of the property, which he took and removed from its place of deposit to the ship of the defendant's testator.   Careras had the naked possession of stolen property, and the ship owner was not misled or induced to receive it by the production of any other evidence of ownership. Neither did any question arise upon the trial as to the effect, upon the right of the plaintiff to demand an immediate delivery, of the fact that the goods were stored in the hold of the vessel under other goods, and that a breaking up of the cargo

would cause delay and expense, and that the officers of the vessel offered to deliver the goods to the owner on the return of the ship from Havana.

There was no conflict of evidence, nor any question to submit, as to the felonious taking of the goods, to the jury.

The plaintiff being clearly entitled to a verdict, upon the ground that the goods had been feloniously stolen and taken from him, the other questions made were wholly immaterial. The actual delivery of a bill of lading to the shipper by the testator would have given him no better right to retain the goods for his indemnity than a purchaser in good faith and for value would have done. Neither could acquire any right to withhold stolen property from the plaintiff, the rightful owner.

The goods having been stolen, there was no question of negligence or estoppel in the case. A party whose horse is stolen may pursue and reclaim his property, although he has negligently left his stable unlocked.

The question of estoppel would have arisen, if the ship-owner had had knowledge of, and acted on, the faith of the original shipping receipt, delivered to Careras.

The delivery of the goods for the purpose named, although it enabled Careras to perpetrate a fraud upon the defendant's testator, did not divest the plaintiff of his title or estop him from reclaiming them wherever found.

The judgment must be affirmed.

All concur except GROVER, J., not voting.

Judgment affirmed.