(44 Misc. Rep. 401.)

### PLATT v. ELIAS et al.

(Supreme Court, Special Term, New York County. July, 1904.)

1. INJUNCTION—MONEY OBTAINED BY EXTORTION.

Plaintiff, a man over 80 years of age, sued for an injunction and a receiver in an action against a woman, as well as depositaries of her moneys, to impress a trust on nearly $700,000 which he had paid her between 1896 and 1904, alleging that these payments were made because of threats of bodily harm and charges of illicit intercourse on the part of plaintiff; that in fact she did charge him with such intercourse, by causing to be filed 'with the registrar of vital statistics of the city where the parties lived a certificate giving the name of a person having the same Christian name and surname as plaintiff as the father of a child born to her. These statements were substantiated by affidavits. *Held* to sufficiently raise the question whether defendant had not been guilty of the crime of extortion and obtained the moneys thereby, authorizing the appointment of a receiver, and an injunction restraining defendant from interfering with or disposing of her property, and her depositaries from paying her deposits in their hands to her or any one else pendente lite.

Action by John R. Platt against Hannah Elias and others. Motion for an order appointing a receiver and for an injunction pendente lite. Granted.

Warren, Warren & O'Beirne, for plaintiff.

Washington Brauns, for defendant Elias.

BLANCHARD, J. The plaintiff's cause of action is based upon his claim that during the period between January 1, 1896, and May 25, 1904, the defendant Hannah Elias wrongfully obtained from him the sum of $685,385, as follows: In 1896, $19,075; in 1897, $39,230; in 1898, $62,000; in 1899, $51,900; in 1900, $84,265; in 1901, $87,076; in 1902, $124,206; in 1903, $186,409; in 1904, $31,533. And he brings this action in equity to secure the following relief:

"First. That an account be taken by and under the direction of this court of the said moneys so unlawfully and wrongfully obtained and converted by the defendant Hannah Elias, the property of this plaintiff, and now held by her, or by any of the other defendants in her name, or for her account or benefit, and an account of any profits arising therefrom. Second. That the said real properties, as well as personal properties and bank accounts and deposits so held by the defendants, or any of them, in the name of or for the benefit of the defendant Hannah Elias, be impressed with a trust in favor of the plaintiff, and that the said defendants be declared to hold the same as trustees for the plaintiff, and that the defendants and each of them be required to transfer and pay over the same, and any accumulations, rents, profits, interest, income, or interest thereof to this plaintiff. Third. That the defendants and each of them be perpetually enjoined from interfering with, transferring, or disposing of said real estate, or with the personal property and money so deposited with or held by them, and from asserting any right or claim thereto save in this action, and that an injunction issue accordingly pending this action. Fourth. That pending this action a receiver be appointed to receive, collect, and hold all rents derived from said real estate described during the pendency of this action, and to abide the direction of the court. Fifth. For such other and further judgment or relief as may be just and proper in the premises, together with the costs of this action."

This motion is for an order appointing a receiver of the property of the defendant Elias, and for an injunction, pending the action, restraining her from in any manner interfering with or disposing of any of her

real and personal property, and restraining the defendant banks and trust companies from paying to her or to any one on her behalf any money on deposit with any of them to her credit. The material facts alleged by the plaintiff in his complaint and affidavit submitted on this motion are substantially as follows:

At some time prior to January 1, 1896 (the precise date not being stated), the plaintiff had illicit sexual intercourse with the defendant Hannah Elias. Thereafter, in the year 1902, she gave birth to an illegitimate child, and caused a certificate of its birth to be filed in the bureau of vital statistics, in the county of New York, falsely stating that John Platt, the plaintiff, was its father. Between January 1, 1896, to May 25, 1904, the plaintiff has paid to the defendant Elias sums of money at various times, aggregating the sum of $685,385. He alleges he paid these sums to her because she threatened that unless he did so she would do him bodily injury and would expose his illicit relations with her to her husband and to the plaintiff's family, friends, and acquaintances, and would charge him with being the father of her illegitimate child, and thereby bring him into public scandal, disrepute, and disgrace, and also threatened that her husband, who was a man of violent temper, would do him bodily harm if made aware of their illicit relations. The plaintiff further alleges that, being in great fear of bodily harm, and to procure said defendant's silence, and to prevent her from exposing his relations with her, and thereby bringing him into public scandal and disgrace, and injuring the plaintiff in his good name, fame, and reputation among his family, friends, and acquaintances, and without any consideration whatever, he delivered and handed over to her, from time to time, and in various sums, the said aggregate sum of $685,385. He further alleges that with this money she has purchased the real and personal property now owned by her, and that the balance is deposited to her credit in the defendant banks and trust companies.

Such, briefly stated, are the alleged facts upon which the plaintiff bases his cause of action. The defendant Elias not having yet interposed her answer, it is not possible to state exactly the nature of the defense which she may interpose. But in her answering affidavit on this motion she denies being guilty of any wrongdoing in respect to the receipt by her of money from the plaintiff, and states that she has known him for 17 or 18 years, and that during that period the plaintiff has given her divers sums of money, the amount of which she is not able to state, and that such sums of money as were given to her by the plaintiff were given voluntarily and without threats of any kind made by her. She also states that since she first met the plaintiff he has been continuously visiting and consorting with her. When divested of all immaterial and merely sensational features, the alleged facts of this case present an ordinary cause of action in equity to impress a trust upon property acquired with funds wrongfully and fraudulently obtained. It is not an action in which the plaintiff seeks to recover from his mistress, or a common prostitute, the money which he has voluntarily paid to her in return for favors. The plaintiff has not brought this action upon that theory at all, and therefore I fail to see the relevancy of the discussion in the brief submitted by the plaintiff's counsel, contending that this money may be recovered, or a trust created in respect thereto,

on the theory that its payment was in the nature of a gift secured through undue influence exercised over the plaintiff by the defendant Elias. The plaintiff does not claim that he made her any gift of the money in question, or that she acquired it through undue influence over him. He claims that he was the victim of extortion and blackmail, and it is upon that theory of the case that this motion should be discussed.

I do not think that the immoral relations existing between the parties have anything to do with the essential qualities of the plaintiff's cause of action. If this woman acquired her property with the money which she has extorted from the plaintiff by threats, as claimed by him, he is entitled to have that property and its proceeds and profits turned over to him, and that, too, without reference to whether she was or was not his paramour. On the contrary, if he paid her any of this money in good faith and voluntarily in return for any favors which she may have extended to him, I think it would be an amazing proposition to ask any court to entertain any action brought by him to secure the return of the money so paid, or of its proceeds or profits. There may be cases where, because of mental incapacity on the part of the man and undue influence on the part of his paramour, a gift of the former to her could be set aside and the amount thereof recovered. But that is the general rule of law applicable to all gifts made under such circumstances in which undue influence is proved to have been the cause of the gift. It is not necessary to invoke any unusual or novel rule of law to sustain such an action. But in the case at bar we have the claim, pure and simple, that the money was extorted from the plaintiff by the defendant Elias; and it seems to me immaterial whether the plaintiff was weak or strong in body and mind, or whether he was young or old. If he paid this money because of the defendant's threats to expose him, and because of his fear that she would carry out this threat if he did not meet her demands for money, he is entitled to the relief he seeks. If the defendant Elias acquired the plaintiff's money in the manner complained of by him, she acquired it feloniously, and money so acquired and the proceeds and profits thereof may be followed by the real owner and recovered, and a court of equity will impose a trust thereon in his favor. Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152; New York & Brooklyn Ferry Co. v. Moore, 18 Abb. N. C. 108, affirmed 102 N. Y. 667, 6 N. E. 293; Brown v. Brown, 40 Hun, 418; Bassett v. Spofford, 45 N. Y. 387, 6 Am. Rep. 101.

In so deciding I have given due consideration to the denials and other matter contained in the answering affidavit of the defendant Elias; but she does not deny that the plaintiff has, within the space of eight years and five months, paid her the sum of $685,385. The payment of so large a sum, under the circumstances, is an amazing fact, and calls for explanation. There is no proof that during this period the plaintiff's illicit relations with her continued. He does not allege it, and she merely states that since she first met the plaintiff he has been continuously visiting and consorting with her. It is, therefore, not apparent why the plaintiff paid over this large sum of money to her. It does appear, however, that in 1900, when the plaintiff was upward of 81 years of age, she caused to be filed in the bureau of vital statistics a certificate stating

that "John Platt" was the father of her child. It also appears that when the plaintiff made some of the payments the defendant Elias consulted some one who was in an adjoining or near by room. If these payments were voluntary, why was the presence or nearness of her lawyer necessary?

Upon an application of the character embraced within the scope of this motion, it is the duty of the court to weigh the proof offered by the respective parties, and in so doing to consider the facts and circumstances, and thus seek to ascertain the probable truth. This I have done, and my conclusion is that the plaintiff has, by a fair preponderance of proof, shown his right to the relief he asks pending the action. In connection with this I have given careful consideration to the testimony given by the plaintiff before the magistrate upon the examination before him in respect to the criminal charge of extortion brought against the defendant Elias upon the complaint of the plaintiff. The testimony related particularly to only one item of the money claimed to have been extorted, namely, the item of $7,500 paid to her by the plaintiff in May, 1904. I am satisfied that, although this testimony may not have been sufficient, standing alone, to establish the fact that the defendant Elias had committed the crime of extortion, it would be sufficient in this action, when considered with other proof, to require the submission of the issues to the court or jury for determination. The plaintiff would not be bound in this action to establish his cause of action under the somewhat limited and strict rules of evidence which are applicable to proof of the criminal charge of extortion in the trial before a magistrate. He will be required to prove his cause of action by a fair preponderance of evidence and no more. This rule is well stated by the Court of Appeals in New York & Brooklyn Ferry Co. v. Moore, 18 Abb. N. C. 106, where Earl, J., says:

"There is no rule of law which requires the plaintiff in a civil action, when a judgment against the defendant may establish his guilt of a crime, to prove his case with the same certainty which is required in criminal prosecutions. Nothing more is required in such cases than a just preponderance of evidence, always giving the defendant the benefit of the presumption of innocence. Where a judgment for the plaintiff involves crime or moral turpitude on the part of the defendant, the court should always require satisfactory proof; and, when that has been given, judgment should follow, regardless of consequences. In no other way can the law be properly administered and private rights effectually protected."

The motion will be granted, but, as in my judgment the interests of justice require that pending the action the defendant Elias should be allowed sufficient means for her reasonable and comfortable support, the order to be entered upon the decision of this motion may provide that out of the property which may come into the hands of the receiver to be appointed should be paid to her on the first of each month the sum of $———, and permitting her to occupy, free of rent, the premises ——— and all the household furniture therein. Her necessary wearing apparel should be entirely excepted from the operation and effect of the receivership and injunction.

Ordered accordingly.