HERMAN Ross, Plaintiff, *v.* FRANK LEUCI, as Property Clerk of the Police Department of the City of New York, et al., Defendants.

City Court of the City of New York, Trial Term, New York County, January 4, 1949.

*Jacob Bromber* for plaintiff.

*John P. McGrath, Corporation Counsel* (*Nathan B. Silverstein* of counsel), for Frank Leuci, as property clerk, defendant.

*N. A. Markowitz* for Harry L. Barth, Inc., defendant.

McCULLEN, J.  In this cause of action tried by the court, in which all parties waived the jury which had been demanded, the plaintiff seeks to replevin his stolen 1942 Dodge automobile or have judgment for its value.  The Dodge automobile is at present in the possession of the plaintiff through an undertaking for replevin issued to the Sheriff of the City of New York on October 31, 1947, in the amount of $2,400.

Both the plaintiff and the defendant Barth claim title to the Dodge automobile in the case.  The defendant Leuci, who is the property clerk of the police department of the city of New York, has no interest in the case except as a stakeholder.

Plaintiff claims that the automobile was taken from him on October 21, 1947, by one Greene, who is alleged to have been recommended to him by a friend who said Greene could get a new car for him.  On that day Greene is alleged to have told plaintiff he could get him immediate delivery on a new Pontiac.  As part of the deal plaintiff is alleged to have agreed to take an allowance of $1,200 on his Dodge car.  Plaintiff signed the back of the statement of transfer (reverse side of registration certificate) which reads, " Owner's Statement:  I am the owner of the motor vehicle described on the reverse side hereof, or member of the firm or officer of the corporation owning same, and have disposed of vehicle as shown above ".  Signed " Herman Ross ".

Plaintiff on that day, October 21st, gave possession of the car to Greene.  Plaintiff on that day received a paper from Greene reading as follows:

" October 21, 1947, Dodge priced $1200, I, James Greene, agree to take 1942 Dodge car on trade for 1947 Pont. with a $1100 bal. on Pont. to be paid when car is delivered.  Pont. to be delivered October 22, 1947, total price of Pont. $2300."

In the afternoon of October 21, 1947, Greene arrived at defendant Barth's gas station at 23rd Street and Tenth Avenue, Man-

hattan, where the defendant Barth also conducts a business as a licensed, used-car dealer and offered Barth the car for sale. Barth is alleged to have stated he would pay $950. Greene went away and returned the next morning, October 22, 1947, and is alleged to have stated he would take the $950 plus $8 which he had spent for certain white rims. Barth thereupon checked with the police department to learn if it was a stolen car and had the car checked by an agency for mortgages and other liens. He is alleged to have received a clearance from both the police department and the agency. About noontime on the same day Greene is alleged to have returned and to have given Barth the registration certificate which was signed in blank by Herman Ross, the registered owner.

Barth testified that this was the first time he saw the registration certificate and he then inquired of Greene about the difference in the name and was told that he, Greene, had bought the car from Ross. Barth testified that under those circumstances he was obliged to have Greene sign the Motor Vehicle Bureau form, M.V.51, which is: '' If this vehicle is sold to an individual and is resold before a new registration is secured, Form M.V.51 must be prepared by each subsequent purchaser and seller and must accompany the new application and this stub   *   *   * ''. Instruction No. 10, Form M.V.51 states that it is to be used by a person other than a dealer when the vehicle is sold. Greene was not a dealer. Barth also received a bill of sale from Greene and gave Greene a check for $958.

On October 24, 1947, a stolen car alarm was sent out on plaintiff's complaint to the police department. On October 27th the car was taken from Barth by the police department of the city of New York.

Defendant Barth claims he is an innocent purchaser for value without notice of any infirmities in the title of the car, or in other words, a bona fide purchaser for value; that he is entitled to the possession of the car; that plaintiff transferred the registration certificate which is the indicia of ownership to Greene, and also transferred the actual possession of the car to Greene; that although at the time plaintiff transferred title and possession to Greene, he was led to do so by fraud, still this gave Greene a voidable title which enabled Greene to transfer title to Barth, before the title was voided by plaintiff. A bona fide purchaser for value may obtain a good title from one who has a voidable title, if he obtains such title before it is voided (*Crocker* v. *Crocker*, 31 N. Y. 507). This is further provided for

in section 105 of the Personal Property Law as follows: *"Sale by one having a voidable title.* Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title."

In the case of *Island Trading Co., Inc.,* v. *Berg Bros., Inc.* (209 App. Div. 63), a man by the name of Bey had bought merchandise for plaintiff, who had issued a letter of credit to him on a bank in New York, which provided that the bank would cash drafts drawn by Bey, if the drafts were accompanied by parcel post receipts showing shipment of the goods. Bey bought goods from the defendant. The defendant packed the merchandise, addressed the packages to the plaintiff and mailed them by parcel post to the plaintiff in Manila. The defendant sent invoices to Bey. Bey, thereafter, went to the defendant and said he could get the cash to pay them, if they would give him the post-office receipts. Upon this representation, defendant gave Bey the post-office receipts and he took them to the bank on which the letter of credit was drawn, and presented them with invoices made out from himself to the plaintiff and got the money. Suffice it to say, the defendant did not get the cash from Bey and it wired the Manila Post Office through the New York Post Office and stopped delivery of the merchandise in Manila. When Island Trading Company sued the defendant he claimed that the goods were stolen from him by Bey, and that title never passed from him.

(The plaintiff in the case at bar is making the same claim, viz., that Greene stole the car from him.) The Appellate Division rejected the claim in the *Island Trading* case (*supra*), holding that the defendant had transferred a voidable title and not a void one. "Moreover, even if it be assumed that the goods were fraudulently procured by Murat Bey, his title was not void, but voidable merely at the option of the defendant, provided such option be exercised before the transfer of the goods to a *bona fide* purchaser for value and without notice. (Pers. Prop. Law, § 105, as added by L. 1911, ch. 571.) Not only were the goods transferred to such a purchaser before such repudiation, but they were transferred and the safeguards which the plaintiff had imposed for its protection were complied with through the knowledge and assistance of the defendant, who made it possible for said Murat Bey to obtain from the plaintiff the purchase price of the goods by intrusting to Murat Bey the parcel post receipts. * * * For the like reasons,

the defendant is estopped from denying plaintiff's title in the goods.''

The Court of Appeals affirmed (239 N. Y. 229, 233) for the same reasons adding '' As between two innocent victims of the fraud, the one who made possible the fraud on the other should suffer.''

Ross, the plaintiff in the case now before us, made possible the fraud, by signing the registration certificate on the reverse side thereof used for the purpose of transferring ownership of an automobile, and delivering physical possession of the car to Greene.

In the case of *Phelps* v. *McQuade* (220 N. Y. 232, 234), a swindler came to a jewelry house and stated he was Baldwin J. Gwynne, a man of financial responsibility in Cleveland. The jeweler relied upon this statement and gave him on credit a quantity of jewelry. The swindler sold the jewelry to another, a third party, for value. It turned out that the swindler was Walter J. Gwynne, and not Baldwin J. Gwynne. The court held that the jeweler could not recover stating: '' Where the vendor of personal property intends to sell his goods to the person with whom he deals, then title passes, even though he be deceived as to that person's identity or responsibility. Otherwise it does not. It is purely a question of the vendor's intention.''

It is quite clear from the facts in the case at bar that they bring it within the rules set forth in the foregoing decisions. Ross, when he parted with title and possession, may have been deceived by Greene, but he intended to transfer title and possession of the car to Greene. The statement of transfer shows this. It is headed in bold, black letters: '' STATEMENT OF TRANSFER ''. Every car owner should know that when he signs the back of the registration certificate, he is disposing of his car. The receipt which Ross accepted from Greene shows he was giving the car to him in part payment of another car which Greene said he would get for him; that upon receipt of the new car, he said, Ross would pay the balance; that the statement of transfer was signed in blank does not detract from Barth's bona fide agreement. In *McNeil* v. *Tenth National Bank* (46 N. Y. 325, 330), where the assignment on a certificate of stock was signed in blank by the owner and left with brokers who subsequently pledged them for a loan, the court held that title passed upon such assignment in blank, and that the signing of the assignment in blank gives the party to whom it is delivered authority to fill it up, and is a good assignment, stating: '' But

if the owner intrusts to another, not merely the possession·of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no.occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depositary, or under contingencies to arise.''

·When Ross signed the statement of transfer in blank he gave implied authority to the person holding it, to fill it in. It is quite true that a thief cannot give good title. Greene was not a thief; he was a swindler. If; in obtaining the car from Ross, he committed common-law larceny, he could not give good title to another. If he committed statutory larceny, his title was voidable and he could give good title to a bona fide purchaser. This distinction is pointed out in *Hoffman* v. *Alpern* (193 Misc. 695, 696) where my brother Justice RIVERS of this court stated: '' If there was such a larceny [common-law larceny] not even a voidable title to the merchandise passed to Fazio, and Knapp, Inc., and Reick & Company could not then claim the goods. A common-law larceny is ' the felonious taking the property of another, without his consent and against his will, with intent to convert it to the use of the taker ' (*Hammon's Case*, 2 Leach 1083, 1089, as quoted in *Bassett* v. *Spofford*, 45 N. Y. 387, 391). In ·the *Bassett* (*supra*) case the court said: ' The fraudulent and wrongful taking being proved with the felonious intent, the *animo furandi*, the only question remaining .in any case is whether the taking was with the consent of the owner; for if so, although the consent .was obtained by gross fraud, there is no larceny.' ''

Obtaining goods by false pretenses, it was held in *Keyser* v. *Harbeck* (3 Duer 373, 388, 391), is not a felony at common law. This case gives a complete dissertation upon the law of purchases in good faith and the principles therein enunciated are still the law.

On the facts it would be apparent that Ross did consent to the taking of the automobile by Greene, that he gave it to him voluntarily, not feloniously, and although the consent was obtained by fraud, still a voidable title was given, and on this basis Greene could transfer a good title to a bona fide purchaser.

What degree of notice is sufficient to charge defendant Barth with bad faith? It has been held that mere suspicion alone is not enough, nor may the title of a bona fide purchaser be voided by negligence on his part or even gross negligence. In Williston on Sales (1948 [Rev. ed.], § 621) it is said that under the Sales

Act, "The law has finally been settled with almost complete uniformity that if the purchaser made his purchase honestly, his negligence, or even gross negligence, will not deprive him of the rights of a purchaser for value in good faith", citing *Parker* v. *Conner* (93 N. Y. 118, 126, 128).

In *Parker* v. *Conner* (*supra*) it is held that in cases involving personal property the question is whether the vendee did in fact know or believe that the vendor had defrauded his immediate seller, not whether he was negligent in failing to discover the fraud. The question is not whether he took the property without exercising sufficient prudence and care, but whether he received it under circumstances as to charge him with receiving it in bad faith, and that unless he is fairly chargeable with notice of fraud, even negligence will not defeat his title. At page 128 we find: "We see no reason why the same principle as to what constitutes a *bona fide* purchaser should not apply to purchasers for value of personal property, as are applied to transferees of negotiable paper, especially where, as in the present case, the vendor's title and legal right of disposition are unquestioned, and the ground upon which the transfer is impeached is not any defect in the chain of title, but that the vendor's motive in selling was to hinder, delay or defraud his own creditors. In such a case there is no duty of active vigilance cast upon the purchaser, for the benefit of creditors of the vendor, which should require him to suspect and investigate the motives of the vendor."

In *Mather* v. *Freelove* (3 N. Y. St. Rep. 424, 426), it is also held that a purchaser for value is not required to make inquiry into the circumstances of his vendor's purchase from his immediate possessor in title.

Therefore, judgment is for both defendants against the plaintiff, dismissing the complaint and for the defendant, Harry L. Barth, Inc., against the plaintiff as follows. The defendant Harry L. Barth is to have the Dodge car or its value as at the time of the seizure which I find to have been $958 plus interest. If the car is returned the defendant Barth is to have in addition to the car the sum of $300 plus interest. There is no evidence of any damage to the defendant Barth except as to the depreciation of the value of the Dodge car which I am discounting to some extent and allowing the $300 plus interest herein referred to. There is judgment also for the defendant Frank Leuci, as property clerk of the police department of the city of New York, for costs against the plaintiff.

Settle long form of decree on notice to all parties.