Arthur G. Klein, J.
This action was tried before me without a jury. Both sides waived findings of fact and conclusions of law. The plaintiff Tree Plateau Co., Inc., is seeking to replevy, and claims damages for the alleged conversion by the defendant Mount Vernon Mills, Inc., of certain duck canvas. At the trial the plaintiff amended its complaint to set forth an additional cause of action alleging negligence by the defendant. The defendant amended its answer to deny any negligence and alleged a defense of contributory negligence on the part of the plaintiff.
The goods in question were sold by the defendant to the Hession Textile Co. in August, September and November, 1960, and were resold by Hession to the Doria Textile division of the plaintiff in September, 1960 and February, 1961. Under an agreement dated November 1 or 2, 1961, plaintiff sold the goods to Seaboard Textile, Inc. During all this time the goods were held by the defendant in its warehouse. On December 4, 1961 plaintiff advised defendant that the goods had been sold to Seaboard Textile, Inc., and requested that defendant release the merchandise to said company but the defendant refused.
In 1958 and 1960, the Doria Textile division of the plaintiff appointed as its sole and exclusive sales agents Michael T. Hession and Jack Kamen who did business through the Hession Textile Co. to which company plaintiff was authorized to pay the commissions due under the agency contract. Besides acting as Doria’s sales agent Hession Textile Co. also did business for its own account. The goods which are the subject of this action were purchased by Hession for its own account and resold by it to Doria.
The evidence clearly establishes that the duck sold by defendant to Hession is the same duck that Hession sold Doria, except, *1019 as conceded by the plaintiff, the 84-inch No. 12 duck referred to in paragraph 3 of the complaint.
The Personal Property Law (§ 100, rule 1) states as follows:
‘1 Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.” It is clear, therefore, that title to the goods passed to Hession as of the invoice dates notwithstanding the fact that the goods were not delivered. This rule applies also to the sales by Hession to Doria.
The order forms, by reference, incorporate the “ Worth Street Bules ” which provide that with respect to unshipped goods, if payment therefor has been in default over five days “ seller shall have the right, upon eight days registered mail notice of such intention: a, to cancel without damages and return to stock; ’ ’. This provision is in accord with the provisions of section 142 of the Personal Property Law which gives an unpaid seller having the right of lien, the right to ‘ ‘ rescind the transfer of title and resume the property in the goods, where he expressly reserved the right to do so in case the buyer should make default ’ ’.
Hession had title to the goods when it sold each item to the plaintiff. “ Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller’s defect of title” (Ross v. Leuci, 194 Misc. 345, 348). Hession’s title was not voided until November 22, 1961, long after it had sold the goods to the plaintiff.
The defendant argues that plaintiff is not a bona fide purchaser because Hession and Kamen or the Hession corporation knew that the fabric had not been paid for and that since Hession and Kamen were the plaintiff’s agents their knowledge is attributable to the plaintiff. The general rule is that a corporation is charged with knowledge of all material facts of which its agent acquires knowledge while acting in the course of his employment and within the scope of his employment (Valley Associates Corp. v. Rogers, 4 Misc 2d 382). “ So long as the agent acts within the scope of his employment in good faith, for the interest of his principal, he is presumed to have disclosed to his principal all the facts that come to his knowledge as agent; but just as soon as the agent forms the purpose of dealing with his principal’s property for his own benefit and advantage * * * he ceases, in fact, to be an agent acting in good faith for the interest of his *1020 principal, and his action thereafter based upon such purpose is deemed to be in fraud of the rights of his principal, and the presumption that he has disclosed all the facts that have come to his knowledge no longer prevails.” (Benedict v. Arnoux, 154 N. Y. 715, 728; see, also, Brooklyn Distilling Co. v. Standard Distilling & Distr. Co., 193 N. Y. 551.) The Restatement of Agency (§ 274) states the general rule that knowledge of an agent is imputed to his principal. Comment ‘ ‘ d ” of this section, however, reads: “ Where agent sells to principal. The rule stated in this Section does not apply where the agent obtains property on his own account and subsequently, as a vendor, transfers it to his principal. In such cases the agent is not acting as agent in the transaction and therefore the principal may be a bona fide purchaser ’ ’. The record here demonstrates that Hession acquired these goods for its own account and then resold them to plaintiff, for value. It was not, therefore, the agent of the plaintiff and the latter cannot be charged with knowledge that Hession had not paid for them. The case of Charles Kreisler, Inc., v. Matusow (144 N. Y. S. 2d 568) cited by the defendant, has no application to the present case since it involves only the general rule concerning the imputation of an agent’s knowledge to his principal. It does not involve the exception to the rule.
When the defendant in November, 1961, cancelled the original sale to Hession, such cancellation could not affect plaintiff’s title to the goods but plaintiff as purchaser did not acquire a right of possession that could defeat defendant’s vendor’s lien. Section 143 of the Personal Property Law provides that an unpaid seller’s right of lien is not affected by any sale which the buyer may have made, unless however ‘ ‘ the seller has assented thereto.” Professor Williston states “ the seller’s lien is destroyed if he agrees to hold as bailee for a subpurchaser” (3 Williston, Sales [rev. ed.], p. 109). The effect of the seller’s assent to the resale of the goods is that he holds the goods for the subpurchaser.
On May 26, 1961 in response to a request by Hession for a verification that defendant was holding goods listed on the letterhead of Doria, including the goods involved here, “for our account and for the account of Doria Textile Company ” the defendant verified the list.
On September 20,1961, Doria wrote the defendant requesting a verification that the defendant was holding the goods involved here which were listed on Doria’s letterhead “ for our account ”. The defendant furnished such verification but, on November 22, 1961, some two months later characterized the confirmation as a *1021 mistake and said it was canceling the invoices and was not returning the goods to stock. It is clear however, that the defendant, by verifying the inventory list in May, assented to the sale to Doria, which1 resulted in a waiver of defendant’s vendor’s lien.
Furthermore, in May, 1961, Hession sold a portion of those goods to two other concerns and the defendant lifted its special instructions suspending the shipment of any fabric held for the Hession account and permitted the goods to be shipped in the name of Doria. Such shipment to a customer of a subpurchaser is the equivalent of delivery of the goods to the subpurchaser itself.
Whether the defendant lost its lien by waiver under section 137 (subd. 1, par. [c]) of the Personal Property Law or because it assented to the sale by Hession to the plaintiff is of no consequence. The plaintiff had both legal title to and the right to immediate possession of the goods when defendant refused to release the goods to Seaboard Textile, Inc.
The plaintiff has accordingly established its right to possession of the goods or their value, plus damages for conversion. There seems to be no dispute as to the value of the goods, $6,872.40 or the amount of the damages, $1,462.27. The second cause of action being alleged in the alternative is dismissed. Settle judgment in accordance with the foregoing.