Edward J. Greenfield, J.
Plaintiff is an automobile rental concern which from time to time would sell off its used automobiles as they were replenished with new ones. On August 23, 1965 plaintiff was offering for sale a two-year-old Chevrolet station wagon for $1,250. One Herbert Schwartzman, who had previously attempted to lease a car, offered to purchase the station wagon, and tendered his check, but it was not certified, and plaintiff’s manager testified he rejected it. Nevertheless, he permitted Schwartzman to take a test run. Schwartzman got *169 into the station wagon, drove off, and was never seen again. Plaintiff’s manager then had Schwartzman’s check, which he says he found on his desk, deposited, but alas, it was returned marked “No funds ”.
A week later, the car was traced to the premises of defendant Weisberg, a licensed auto wrecker and junk' dealer in The Bronx. Weisberg was also licensed as a used car dealer in Yonkers. Weisberg claimed he had purchased this car from Schwartzman for $900. He actually paid Schwartzman only $300 down, the balance to be paid at a later time. Schwartzman has never been heard from again. Weisberg received from Mm neither a bill of sale nor a registration certificate for the motor vehicle, but he immediately resold it the same day to a dealer for $1,200.
Plaintiff now sues for conversion, seeking to recover from Weisberg and Ms firm the value of its station wagon. Defendant resists, insisting that he had acquired good title to the motor vehicle. He invokes .the provisions of the Hniform Commercial Code to substantiate his argument that he could acquire good title from a merchant, or even from a thief. There appear to be no reported cases on these provisions of the code.
At common law, one could convey only such title as he himself possessed. Thus no one could obtain good title from a thief, no matter how innocent the circumstances of his acquisition. (Bassett v. Spofford, 45 N. Y. 387; Knox v. Eden Musee Americain Co., 148 N. Y. 441; Damis v. Barcia, 266 App. Div. 698; Tompson v. Goldstone, 171 App. Div. 666.)
The harshness of this rule with respect to innocent purchasers who had paid their money in perfect good faith without any indication of anything amiss in the transaction led to statutory modifications of the common-law rule, so that where the title owner had conveyed a voidable title he would not be permitted to revoke it as against a bona fide purchaser for value. (Personal Property Law, § 105.) Innocence would thus transmute the imperfect title into a state of perfection and impregnability. Impeccable virtue would receive its just reward, and title would pass from a swindler, if not from a thief. (Ross v. Leuci, 194 Misc. 345; Stanton Motor Corp. v. Rosetti, 11 A D 2d 296.)
The protection of the innocent was further developed to cover situations where the title owner had not conveyed even a voidable title, but had so clothed the transferor with apparent vestiges of authority and indicia of title that equitable principles of estoppel were invoked to preclude the title owner from asserting his title. This would cover such circumstances as the *170 delivery of goods to a retail merchant on consignment, or other situations in which the transferor was permitted to retain and sell inventory, with title retained purely as a security device. (Personal Property Law, § 104. Zendman v. Harry Winston, Inc., 305 N. Y. 180; Oakland Mfg. Co. v. Linde Co., 162 App. Div. 543; First Nat. Bank of Binghamton v. Herman Co., 275 App. Div. 415.) Possession alone by the transferor was not enough; he must have been authorized to sell the goods. (Barnard v. Campbell, 55 N. Y. 456; Farnham v. Eichin, 230 App. Div. 639.) Thus where the goods had been obtained by false representations the true owner was not estopped. (Hentz v. Miller, 94 N. Y. 64.)
The Uniform Commercial Code has expanded the rights of a third person who has purchased the property in all innocence, even from a thief, or from a person who has been entrusted with possession, even if not authorized to sell. (Uniform Commercial Code, § 2-403.) Under the code, title ordinarily passes when goods are delivered, unless otherwise explicitly agreed. (Uniform Commercial Code, § 2-401, subd. [2].) If passage of title is dependent upon the performance of some condition subsequent, this is a voidable title which can be transferred to a bona fide purchaser for value even if the transferor was deceived as to the identity of the purchaser, the delivery was in exchange for a check later dishonored, or procured through a fraud punishable as larcenous under the criminal law. Thus what was formerly ambiguous has been made explicit. (Uniform Commercial Code, § 2-403, subd. [1].)
Subdivision (2) provides that the entrusting of goods to a person in the business of selling goods of that kind can validate a transfer to a buyer in the ordinary course of business. This is so even if procurement of the entrusting was larcenous. (Subd. 3.)
Under these provisions, the first question posed is whether plaintiff conferred a voidable title upon Schwartzman, whis-h could be perfected in the hands of a bona fide purchaser for value. Plaintiff put the vehicle in Schwartzman’s hands, according to its testimony, solely for the purpose of permitting a test run, and not with any idea of conferring title upon him. The fact that this was done after Schwartzman’s offer of purchase ostensibly had been rejected, and that after he took the car, plaintiff’s manager “found” his check and immediately deposited it raises troublesome questions as to whether or not plaintiff had in fact intended to convey a voidable title dependent on whether the check cleared.
*171 Defendant argues further that irrespective of questions of title, plaintiff did entrust possession of the ear to Schwartzman, who was a dealer in wholesale automobiles, and he therefore comes within the protective ambit of subdivision (2) of section 2-403 of the Uniform Commercial Code. Do the facts here spell out an “ entrusting ” of the car to Schwartzman? Even if they do, there is no competent evidence to establish that Schwartzman was “ a merchant who deals in goods of that kind ”. Defendant offered in evidence an invoice he had received from Schwartzman in a prior transaction headed ‘1 Herb Schwartzman, Wholesale Automobiles ’ ’, but this would not suffice to establish the fact, and certainly would not have indicated to plaintiff that Schwartzman was in fact a merchant. Since the “entrusting” provisions of section 2-403 of the Uniform Commercial Code are an extension of the principle of estoppel, it would appear to be essential that the actual vocational status of the merchant be established, but also that the original owner and the ultimate purchaser must be shown to have been aware of that status. An owner entrusting his goods to another cannot be said to have conferred the indicia of ownership and apparent authority to deal with the goods unless he knows he has transferred possession to a dealer. Similarly, the ultimate purchaser can demonstrate reliance and invoke the statutory provision only if he believed he was buying from a dealer. The proof here is wholly lacking in both respects.
Beyond that, defendant’s claim to good title must founder on considerations of his own status. If he acquired the property from one who had a voidable title, he must show that he was a “good faith purchaser for value”. (Uniform Commercial Code, § 2-403, subd. [1].) That term is defined in section 1-201 and paragraph (b) of subdivision (1) of section 2-103. The requirement of good faith for a merchant like defendant is simply “ honesty in fact and the observance of reasonable commercial standards of fair dealing”. (Uniform Commercial Code, § 2-103, suibd. [b].) If he acquired the property from a merchant who was entrusted with possession, he must demonstrate that he was a “ buyer in the ordinary course of business (Uniform Commercial Code, § 2-403, subd. [2].) This term is likewise defined in subdivision (9) of section 1-201, and in requiring the purchase from one in the business of selling goods of that kind, is more restrictive than the term “ good faith purchaser for value ”. (See Commentary to Uniform Commercial Code, § 2-403 in McKinney’s Cons. Laws of N. Y., Book 62%, Part 1, p. 397.)
*172 The facts of this case indicate that defendant does not fit in either category. He was not registered or licensed to buy or sell used cars in New York City, but could legally deal only in “ junk ”. He paid Schwartzman $300 in cash for a car he was able to resell immediately for $1,200. He was shown no bill of sale or owner’s registration, and he resold the car without transferring any owner’s registration. Simple prudence would have put anyone in an honest transaction on guard. Certainly the standards of honesty in fact and reasonable commercial standards of fair dealing have not been met. He took the risks involved, and was out of. pocket $300 for a two-year-old station wagon. His claim that he is still holding the “ balance ” for the vanished Schwartzman against the day of eventual return is far •from convincing. It was he who had prior dealings with Schwartzman. Certainly if he was not working with him, he had every reason to be skeptical of Schwartzman’s claim of ownership. The Uniform Commercial Code protects the innocent purchaser, but it is not a shield for the sly conniver, the blindly naive, or the hopelessly gullible.
Plaintiff is therefore entitled to judgment in the amount of $1,200, with interest from the 30th day of August, 1965.