**DEWELDON, LTD., Plaintiff—Appellant,**

v.

**Robert MCKEAN, Defendant—Appellee.**

No. 97–1175.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1997.

Decided Sept. 24, 1997.

Keven A. McKenna, with whom Karen A. Clark and Keven A. McKenna, P.C., Providence, RI, were on brief, for Plaintiff–Appellant.

Matthew T. Oliverio, Providence, RI, for Defendant–Appellee.

Before LYNCH, Circuit Judge, HILL * and JOHN R. GIBSON,** Senior Circuit Judges.

HILL, Senior Circuit Judge.

DeWeldon, Ltd. sued in district court to recover three paintings it alleges are in the possession of Robert McKean but to which he is not entitled. After a bench trial, the district court ruled that McKean is entitled to retain possession of the paintings and entered judgment for McKean. This appeal ensued.

## I.

Felix DeWeldon is a well-known sculptor and art collector. He owned three paintings valued at $26,000. He displayed these, and other collection-grade paintings, on the walls of his home—Beacon Rock, in Newport, Rhode Island. He declared bankruptcy in 1991. In 1992, DeWeldon, Ltd. purchased all

---

* Of the Eleventh Circuit, sitting by designation.

** Of the Eighth Circuit, sitting by designation.

Felix DeWeldon's personal property from the bankruptcy trustee. In 1993, Nancy Wardell, the sole shareholder of DeWeldon, Ltd., sold all her DeWeldon, Ltd. stock to the Byron Preservation Trust, which in turn sold Felix DeWeldon an option to repurchase the paintings and a contractual right to continue to retain possession of the paintings until the option expired. At all times, Felix DeWeldon continued to possess and display the paintings at Beacon Rock. In 1994, his son Byron approached Robert McKean, an acquaintance, and told him that his father was interested in selling some of his paintings. McKean viewed the paintings at Beacon Rock and subsequently purchased the paintings at issue for $50,000. DeWeldon, Ltd. sued in district court to recover the paintings. The district court entered judgment for McKean. For the following reasons, we affirm.

## II.

We conclude that the evidence sufficiently establishes the following facts found by the district court. Felix DeWeldon was a "well-known artist" and "collector." After DeWeldon, Ltd. purchased Felix DeWeldon's paintings from his bankruptcy estate, Frederick Crevoiserat, director of DeWeldon, Ltd., entrusted the paintings to Felix DeWeldon as custodian. DeWeldon, Ltd. allowed Felix DeWeldon to maintain possession of the paintings; it put no signs on the premises, nor tags or labels on the paintings themselves to indicate that Felix DeWeldon no longer owned the paintings. The paintings remained on the walls of Beacon Rock.

McKean viewed the paintings on the walls at Beacon Rock. The only tags on the back of the paintings were those of Christie's—the auction house.[1] McKean inquired of Christie's, and was informed that the paintings had not sold at auction and DeWeldon had "repurchased" them.[2] McKean paid more than the appraised value of the paintings and Felix DeWeldon gave him a bill of sale.

In June of 1993, a Mr. Panteleakis recorded a UCC lien in Newport, Rhode Island claiming a security interest in the paintings.[3] The lien had been granted by DeWeldon, Ltd. of 646 Bellevue Ave, not by Felix DeWeldon of 145 Harrison Ave. There is no evidence of any recorded interest in the paintings, security or otherwise, having been granted by Felix DeWeldon.

In December of 1993, DeWeldon, Ltd. sued Felix DeWeldon seeking possession of the paintings. The Rhode Island court denied the relief based upon Felix DeWeldon's option to repurchase and right of possession, but enjoined Felix DeWeldon from transferring or removing the paintings from Beacon Rock.

## III.

The district court concluded from these facts that DeWeldon, Ltd. is equitably estopped from asserting, against McKean, its ownership interest in the paintings. We need not review this holding, as we conclude that the judgment of the district court may be affirmed on other grounds under the laws of Rhode Island.[4]

As a general rule, a seller cannot pass better title than he has himself. Nevertheless, the Uniform Commercial Code (UCC) as adopted by Rhode Island provides that an owner who entrusts items to a merchant who deals in goods of that kind gives him or her power to transfer all rights of the entruster to a buyer in the ordinary course of business.

---

1. At some time prior to the filing of bankruptcy, Felix DeWeldon had commissioned Christie's to auction the paintings.

2. This term of art in the trade means that DeWeldon had taken the paintings back when they did not sell at auction.

3. Apparently Mr. Panteleakis had underwritten DeWeldon, Ltd.'s purchase of DeWeldon's personal property.

4. We may affirm the judgment on any independently sufficient ground established by the record of the case. *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir.1994); *Inmates of Suffolk County Jail v. Rufo*, 12 F.3d 286, 291 (1st Cir.1993).

R.I. Gen. Laws § 6A–2–403(2).[5] " 'Entrusting' includes any delivery and any acquiescence in retention of possession, regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." R.I. Gen. Laws § 6A–2–403(3). Under this provision, a buyer in the ordinary course of business will prevail over the claim of a party who entrusted such items to the merchant.

In order for McKean to be protected by § 6A–2–403, DeWeldon, Ltd. must have allowed Felix DeWeldon to retain possession of the paintings. McKean must have bought the paintings in the ordinary course of business. He must have given value for the paintings, without actual or constructive notice of DeWeldon Ltd.'s claim of ownership to them. Finally, Felix DeWeldon must have been a merchant as defined by R.I. Gen. Laws § 6A–2–104. Under this section, a merchant is one who has special knowledge or skill and deals in goods of the kind or "otherwise by his or her occupation holds him or herself out as having knowledge or skill peculiar to the practices or goods involved in the transaction. . . ." *Id.*

■ Under the facts found by the district court, McKean's purchase of the paintings is protected by the entrustment doctrine. First, DeWeldon, Ltd. entrusted the paintings to Felix DeWeldon. After DeWeldon, Ltd. purchased the paintings, it acquiesced in Felix DeWeldon's retention of them. Although DeWeldon, Ltd. made some late efforts to regain possession of the paintings, these efforts were frustrated by its own prior grant to Felix DeWeldon of an option and right of possession until the expiration of the option.

Second, McKean was a buyer in the ordinary course of business. Byron informed McKean that Felix DeWeldon wished to sell some paintings. The paintings were hanging in Felix DeWeldon's home when McKean viewed and subsequently bought them. He knew that Felix DeWeldon had sold paintings out of his home before. McKean gave value for the paintings. In fact, he paid more than their appraised value.

McKean had no actual notice that Felix DeWeldon was no longer the true owner of the paintings. DeWeldon, Ltd. did nothing to shield the paintings in the cloak of its ownership. It did not place markings on the paintings, as Christie's had when the paintings were in its possession; it posted no notice of ownership by or near the paintings; it failed to post the injunction it secured against transfer of the paintings by Felix DeWeldon; it posted, but then terminated, a security guard at DeWeldon's residence despite such a guard's being expressly permitted in the injunction; it posted no warnings against removal of the paintings from the residence. There were no markings on the paintings or other notice that Felix DeWeldon no longer owned the paintings. The paintings were hanging in Felix DeWeldon's home.

■ Neither did McKean have any constructive notice of another's ownership interest in the paintings. The lien recorded by Mr. Panteleakis did not constitute such notice because there was no way McKean could have discovered it upon a reasonable inquiry. It was not granted by Felix DeWeldon.

■ Third, under the facts of this case, Felix DeWeldon acted as a merchant within the meaning of the Rhode Island Commercial Code. Under the Code, "merchant" is given an expansive definition. *Providence & Worcester R. Co. v. Sargent & Greenleaf, Inc.*, 802 F.Supp. 680, 684 n. 2 (D.R.I.1992). The Code provides that a merchant is "one who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction. . . ." R.I. Gen. Laws § 6A–2–104. Comment 2 to this section notes that "almost every person in business would, therefore, be deemed to be a 'merchant'." *Id.*

■ The entrustment provision of the UCC is designed to enhance the reliability of commercial sales by merchants who deal in the kind of goods sold. *Porter v. Wertz*, 53

---

5. Rhode Island law applies to this diversity action.

N.Y.2d 696, 439 N.Y.S.2d 105, 421 N.E.2d 500 (1981) (art dealer is a merchant when dealing in goods of the kind—paintings). It shifts the risk of resale to the one who leaves his property with the merchant. *Id.* 439 N.Y.S.2d at 105–07, 421 N.E.2d at 500–01. *See also Atlas Auto Rental Corp. v. Weisberg,* 54 Misc.2d 168, 281 N.Y.S.2d 400 (N.Y. City 1967).

The district court found that Felix DeWeldon was a "well-known" artist whose work was for sale commercially and a "collector." There was art work all over Felix DeWeldon's home. He had recently sold paintings to a European buyer. By his occupation he held himself out as having knowledge and skill peculiar to art and the art trade. McKean viewed him as an art dealer.

We conclude from these facts that Felix DeWeldon was a "merchant" within the meaning of the entrustment provision of the UCC as adopted by the Rhode Island Commercial Code.

When a person knowingly delivers his property into the possession of a merchant dealing in goods of that kind, that person assumes the risk of the merchant's acting unscrupulously by selling the property to an innocent purchaser. The entrustment provision places the loss upon the party who vested the merchant with the ability to transfer the property with apparent good title. The entrustor in this case, DeWeldon, Ltd., took that risk and bears the consequences.

## IV.

DeWeldon, Ltd. entrusted three paintings to the care of Felix DeWeldon. Felix DeWeldon was a merchant who bought and sold paintings. Robert McKean was a purchaser in the ordinary course of business who paid value for the paintings without notice of any claim of ownership by another. Under the law of Rhode Island, McKean took good title to the paintings. The judgment of the district court is *affirmed.*