UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued:  September 15, 2015     Decided:  April 21, 2016)

Docket No. 15-35

───────────────────

STEVEN ZARETSKY, an individual, and SUZANNE ZARETSKY, an individual,
*Plaintiffs–Counter Defendants–Appellees*,

v.

WILLIAM GOLDBERG DIAMOND CORPORATION,
a New York For-Profit Corporation,
*Defendant–Counter Claimant–Appellant*.[*]

───────────────────

Before:        NEWMAN, SACK, and LYNCH, *Circuit Judges*.

The parties assert competing claims of ownership of a 7.35 carat

pear-shaped diamond.  The defendant appeals from a Final Order (treated as a

judgment, Fed. R. Civ. P. 54(a)) of the United States District Court for the

Southern District of New York (Shira A. Scheindlin, *Judge*) concluding that the

plaintiffs are the rightful owners of the diamond, and granting summary

judgment in their favor.  In a prior Opinion and Order, the district court

determined that the person to whom the defendant consigned the diamond was

───────────────────

[*] The Clerk of the Court is respectfully directed to amend the official caption as shown above.

a "merchant" under the second definition of section 2-104(1) of the New York Uniform Commercial Code, and for that reason alone qualified as a person who could transfer rights to entrusted goods under a separate section of that code, section 2-403(2). We conclude, however, that the district court erred in failing to apply the requirement of section 2-403(2) that a merchant entrusted with a good can transfer rights to it only if that person "deals in goods of that kind," which we understand to mean regularly "sells" goods of that kind. Assessing the record on summary judgment, we conclude that there is no material evidence to support the application of section 2-403(2) to this case. The judgment of the district court is therefore:

REVERSED and REMANDED with instructions to the district court to enter summary judgment for the defendant.

HOWARD WINTNER, The Abramson Law Group, PLLC, New York, New York, *for Defendant–Counter Claimant–Appellant.*

WILLIAM I. STRASSER (Conrad M. Olear, Gregory D. Emond, *on the brief*), Strasser & Associates, P.C., Paramus, New Jersey, *for Plaintiffs–Counter Defendants–Appellees.*

SACK, *Circuit Judge*:

In 2003, the appellant William Goldberg Diamond Corporation ("WGDC") consigned a large pear-shaped diamond to Derek Khan, a celebrity fashion

stylist. Khan, without WGDC's permission, subsequently sold the diamond to a third party. Through a series of transfers, the diamond ultimately came into the possession of the appellees Steven Zaretsky and Suzanne Zaretsky (the "Zaretskys"). Following Steven Zaretsky's attempt to insure the diamond, its questionable provenance became apparent, and the instant litigation to clarify title ensued.

Section 2-403(2) of the New York Uniform Commercial Code (the "NYUCC") provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." Whether Khan "deals in goods of that kind" under this provision—and could therefore effectively transfer WGDC's rights to the diamond—is the primary issue on appeal.

The district court (Shira A. Scheindlin, *Judge*) did not decide that issue. It concluded that Khan had the power to transfer WGDC's rights to the diamond under section 2-403(2) solely because, "'[b]y his occupation,' Khan clearly '[held] himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction.'" *Zaretsky v. William Goldberg Diamond Corp.*, 69 F. Supp. 3d 386, 391 & n.33 (S.D.N.Y. 2014) (second brackets in original) (quoting

N.Y. U.C.C. Law § 2-104(1)).  That finding established that Khan qualified as a "merchant" under the definition set forth in section 2-104(1) of the NYUCC; however, it did not establish that he transferred rights to the diamond under section 2-403(2).  By the terms of section 2-403(2), Khan had the power to transfer all rights in a "good" (the diamond) given to him by an "entruster" (WGDC) only if he was at the time a merchant who "deals in goods of that kind" (diamond jewelry and the like).

Although the New York Court of Appeals has not explicitly defined "deal[ing] in goods of that kind," persuasive authority from New York courts and elsewhere leads us to conclude that the phrase means the regular sale of the kind of goods at issue in the case.  Applying that definition, we conclude that the Zaretskys have not raised a triable issue of fact as to Khan's capacity to transfer title under section 2-403(2) because there is no record evidence that he regularly sold diamonds or other high-end jewelry.  We further conclude that the Zaretskys' remaining arguments—regarding the timeliness of this appeal, whether the consignment is a "transaction of purchase" under section 2-403(1) of the NYUCC, and the defense of laches—are without merit.  We therefore direct the district court on remand to enter summary judgment for WGDC.

# BACKGROUND

*Factual Background*

WGDC, a New York corporation, identifies itself as one of the oldest and most reputable American manufacturers and wholesale dealers of polished diamonds and other high-end diamond jewelry. From June 2002 through February 2003, WGDC consigned millions of dollars' worth of such jewelry to non-party Derek Khan, a fashion stylist in New York who outfitted his clients for celebrity events and photo shoots, often using this jewelry.[1] Through the wearing of its diamond jewelry by celebrities, WGDC hoped to boost its image, prestige, and presumably, ultimately, its profits.

In February 2003, WGDC consigned to Khan a pendant containing a pear-shaped diamond (the "Diamond") weighing approximately 7.44 carats.[2] The consignment was made pursuant to a WGDC memorandum (the "Consignment Agreement") that Khan executed, and which stated that the document "[wa]s not

---

[1] Khan is credited with originating the "Bling!" style—a cross between a "street style" look and "couture fashion" worn by celebrities and musicians—which combined large quantities of diamonds and other expensive jewelry with high fashion. Declaration of Derek Khan, Joint Appendix ("J.A.") 387 ¶ 8; *cf., e.g.*, Mazhar Farooqui, *Bling King: This is my playground*, Gulf News, Feb. 28, 2008, http://gulfnews.com/life-style/glamour/bling-king-this-is-my-playground-1.449054 (last visited Apr. 18, 2016).

[2] For a photograph of the Diamond, see Michael Wilson, *Hot Ice: The Tortuous Tale of the Pear-Shaped Diamond*, N.Y. Times, May 9, 2014, http://www.nytimes.com/2014/05/10/nyregion/hot-ice-the-tortuous-tale-of-the-pear-shaped-diamond.html (last visited Apr. 18, 2016).

an invoice or bill of sale."  Joint Appendix ("J.A.") 336 (capitalization removed).

The reverse side of the Consignment Agreement further provided that Khan "acquire[d] no right or authority to sell, pledge, hypothecate or otherwise dispose of the merchandise, or any part thereof"; that any sale of the merchandise "shall occur only if and when [Khan] shall have received from [WGDC] a separate invoice covering specific merchandise on the memorandum"; and that the agreement was governed by New York law.  J.A. 338.

WGDC became worried when Khan, atypically, failed to return the Diamond on time.  In or about February 2003, WGDC reported the disappearance of the Diamond to the New York City Police Department.  Later that month, WGDC retained the services of a private investigator to search for the Diamond.  On March 19, 2003, WGDC also reported the theft to the Gemological Institute of America (the "GIA"), a not-for-profit entity that grades and certifies gemstones and maintains a database of stolen diamonds and other jewelry.  Khan was subsequently convicted of the theft of many items, including the Diamond, from WGDC and other jewelers.[3]

---

[3] After his release from prison, Khan was deported to his native country of Trinidad and Tobago.  His career as a fashion stylist nonetheless now appears to be thriving in

On March 17, 2003—two days prior to WGDC's report to the GIA—the New York diamond supplier Louis E. Newman, Inc., submitted the Diamond (now weighing, for reasons not disclosed in the record, 7.35 carats) to the GIA for certification. The certification was issued one week later. The GIA apparently did not realize that the gemstone reported stolen by WGDC and the gemstone it certified for Louis E. Newman, Inc., were one and the same.

In late 2003, Stanley & Son Jewelers, Inc. ("S&S"), purchased the Diamond from Louis E. Newman, Inc., on behalf of one Frank Walsh as a present for his wife, Donna Walsh (together, the "Walshes"). Some nine years later, in August 2012, Donna Walsh gave the Diamond to her daughter and son-in-law, Suzanne Zaretsky and Steven Zaretsky, both New Jersey residents. Steven Zaretsky authorized another jeweler to appraise the Diamond for insurance purposes. On December 10, 2012, that jeweler submitted the Diamond to the GIA for certification. Soon thereafter, the GIA informed the Zaretskys that the Diamond

Dubai. *See* James Gabrillo, *Derek Khan is getting a second bite of the cherry*, The National, July 3, 2012, http://www.thenational.ae/lifestyle/fashion/derek-khan-is-getting-a-second-bite-of-the-cherry (last visited Apr. 18, 2016); Eric Wilson, *A Jewel Thief's Audacious Comeback*, N.Y. Times, Apr. 17, 2008, http://www.nytimes.com/2008/04/17/fashion/17CROOK.html (last visited Apr. 18, 2016).

appeared to have been stolen from WGDC in 2003. The GIA has retained possession of the Diamond pending a final resolution of its rightful owner.

*Procedural History*

In June 2013, the Zaretskys brought a diversity action in the United States District Court for the District of New Jersey against the GIA, WGDC, Eve Goldberg (Vice President of WGDC), Louis E. Newman, Inc., and several unidentified "John Doe" and "ABC Corporation" defendants. The Zaretskys sought, among other relief, a declaratory judgment to the effect that they hold proper title to the Diamond.

In February 2014, a motion by Eve Goldberg and WGDC for a change of venue to the Southern District of New York was granted by the New Jersey district court, and the case was transferred to the Southern District. The Zaretskys then amended their complaint, adding Louis Newman & Company, LLC, and S&S as defendants. WGDC then answered and filed a counterclaim against the Zaretskys for an order establishing its rightful ownership of the Diamond.

After the dismissal of several claims[4] and parties,[5] and the completion of discovery, the Zaretskys and WGDC filed cross-motions for summary judgment. In support of its motion, WGDC submitted a declaration by Eve Goldberg stating that "Khan did not ever purchase or sell *any* diamonds from or to the WGDC, and he was never involved or a participant in any transaction involving the sale of a diamond or piece of jewelry of the WGDC to anyone, not even a celebrity customer."  Goldberg Decl., Oct. 27, 2014, J.A. 326 ¶ 32 (emphasis in original). The record before the district court also contained a declaration by Khan that the Zaretskys submitted in opposition to WGDC's motion, which describes the two types of consignment agreements he had with various jewelers:

> Under the terms of certain consignment agreements, . . . I would
> provide the specified jewelry to certain celebrities or other well-
> known individuals[] for whom I was employed as personal stylist[.]
> [T]he particular individuals would receive the items for personal use

---

[4] *See Zaretsky v. Gemological Inst. of Am., Inc.*, No. 14 Civ. 1113(SAS), 2014 WL 1678990, at *1, 2014 U.S. Dist. LEXIS 58975, at *1-2 (S.D.N.Y. Apr. 28, 2014) (dismissing conversion, breach of fiduciary duty, and intentional infliction of emotional distress claims against the GIA).

[5] Before the case was transferred, the Zaretskys voluntarily dismissed their claims against Eve Goldberg.  The transferee Southern District court then dismissed the GIA, Louis E. Newman, Inc., and Louis Newman & Company, LLC, as parties to this action pursuant to stipulation.  The court also dismissed S&S as a party after granting its motion to dismiss in full.  *See Zaretsky v. William Goldberg Diamond Corp.*, No. 14 Civ. 1113(SAS), 2014 WL 4160232, at *3, 2014 U.S. Dist. LEXIS 114636, at *11 (S.D.N.Y. Aug. 18, 2014).  Several other unnamed and unidentified defendants were never served.

and as prospective purchasers of the items. Such terms would be explicit within the consignment agreement[s] themselves. . . .

Under the terms of other consignment agreements, I was given authority, by the consignor, to sell the specified items of jewelry to those by whom I was employed as a stylist. On multiple occasions[,] several of the celebrities for whom I worked as stylist[] expressed a desire to purchase the specific item of jewelry consigned to me. I would then introduce the particular prospective purchaser . . . to the respective consignor to facilitate and complete the consignment sale for the specific jewelry item. Upon completion of any particular sale, under the terms of the consignment agreements, I had the right to receive a commission or compensation in the amount paid, by the particular client, above the price set by the consignor.

Khan Decl., Nov. 7, 2014, J.A. 386-87 ¶¶ 4-5.

In its November 17, 2014, Opinion and Order deciding the summary judgment motions, the district court described the parties' positions thus:

WGDC argues that because Khan stole the diamond, he could not hold title in the diamond—nor transfer title to it—as a matter of law. Therefore, WGDC argues that it is the rightful owner of the diamond. On the other hand, plaintiffs argue that Khan was not a thief, but rather an entrusted merchant who held "voidable title" in the diamond—and was therefore capable of transferring title— under the Uniform Commercial Code . . . . When the Walshes purchased the diamond in 2003, plaintiffs argue that [the Walshes] acquired good title to the diamond, which was subsequently transferred to them. Therefore, plaintiffs contend that WGDC is no longer the owner of the diamond as a matter of law. In the alternative, plaintiffs argue that even if WGDC's legal theory is correct, any replevin action is barred by the doctrine of laches, due to needless and prejudicial delay.

*Zaretsky*, 69 F. Supp. 3d at 389. The crucial issue in dispute, and the one on which the district court ultimately granted summary judgment, was whether Khan qualified as a merchant who could pass title to the Diamond.

To resolve that dispute, the district court considered two provisions of the NYUCC. *Id.* at 390. The first, section 2-104(1), defines the term "merchant" in three alternative ways. The second, section 2-403(2), provides that a merchant to whom goods are entrusted is able "to transfer all the rights of the entruster to a buyer in ordinary course of business" only if the merchant "deals in goods of that kind." N.Y. U.C.C. Law § 2-403(2).

Under the district court's statutory interpretation, if the putative merchant met any of the three alternative definitions in section 2-104(1), that would be sufficient to enable him or her to pass title to an entrusted good under section 2-403(2). *Zaretsky*, 69 F. Supp. 3d at 390. The court decided that Khan met the second of those definitions because, in the court's view, he had indisputably "held himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." *Id.* at 391 & n.33 (brackets removed) (quoting N.Y. U.C.C. Law § 2-104(1)). On that basis alone, the court concluded as a matter of law that Khan could transfer WGDC's rights to the Diamond under section 2-

403(2). *See Zaretsky*, 69 F. Supp. 3d at 390-91 & nn.26, 32. The court then granted summary judgment in the Zaretskys' favor. *Id.* at 392.

On December 12, 2014, the district court entered a separate "Final Order" adjudging the Zaretskys to be the rightful owners of the Diamond. On January 5, 2015, WGDC filed a notice of appeal, contesting the district court's summary judgment decision and attaching a copy of the December 12 order.

## DISCUSSION

### I. Standard of Review

We review the district court's grant and denial of summary judgment *de novo*. *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (grant); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 86 (2d Cir. 2015) (denial). In doing so, we "resolv[e] all ambiguities and draw[] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Chen*, 805 F.3d at 69 (quoting *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.    Timeliness of Appeal

The Zaretskys argue at the threshold that this appeal should be dismissed as untimely.  Under Federal Rule of Appellate Procedure 4(a)(1)(A), a notice of appeal must generally be filed "within 30 days after entry of the judgment or order appealed from" in a civil case.  The Zaretskys maintain that WGDC's notice of appeal is deficient because it was filed on January 5, 2015, more than thirty days after the district court issued its Opinion and Order on November 17, 2014.

The Zaretskys' argument incorrectly assumes, however, that November 17 is the date of the entry of judgment and, consequently, the start of the thirty-day period to file the notice of appeal.  After issuing its Opinion and Order in favor of the Zaretskys, the district court was required to set forth its judgment in a separate document.  *See* Fed. R. Civ. P. 58(a) (providing that "[e]very judgment and amended judgment must be set out in a separate document," subject to certain exceptions inapplicable in this case).  The judgment was not considered "entered" for purposes of Appellate Rule 4(a) until the district court issued that separate document, which it did on December 12.  *See* Fed. R. App. P. 4(a)(7)(A)(ii) (providing that "[a] judgment or order is entered . . . when . . . the judgment or order is set forth on a separate document, or 150 days have run from

entry of the judgment or order in the civil docket[, whichever comes first]").

WGDC's January 5 notice of appeal was timely filed within thirty days after that operative date. *See* Fed. R. App. P. 4(a)(1)(A).[6]

III. The "Deals In" Requirement of Section 2-403(2)

As the district court noted, two provisions of the NYUCC are relevant to the parties' competing claims to the Diamond. The first is section 2-104(1), which provides three alternative definitions for the stand-alone term "merchant" under the code:

> [1] a person who deals in goods of the kind *or*
> [2] otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction *or*
> [3] to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

---

[6] WGDC's notice of appeal is no less timely because it purports to appeal from the "Final Order entered on the 17th day of November, 2014." *Zaretsky*, No. 14-cv-1113, Dkt. No. 209. The notice may simply contain a typographical error, inasmuch as WGDC attached the December 12 Final Order to its notice of appeal. *See id.* Moreover, any reference to the substantive scope of the appeal does not impact WGDC's time limit for filing under Rule 4(a), compliance with which is "mandatory and jurisdictional," *see Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 363 (2d Cir. 2003) (quoting *Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 55 (2d Cir. 1997)), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105 (2004), and which criteria WGDC has satisfied here.

N.Y. U.C.C. Law § 2-104(1) (emphases and bracketed numbers added; formatting altered). The second relevant provision is section 2-403(2), which states that "[a]ny entrusting of possession of goods to a merchant *who deals in goods of that kind* gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." N.Y. U.C.C. Law § 2-403(2) (emphasis added).[7] Both of these provisions precisely track the model Uniform Commercial Code (the "UCC"). *See* U.C.C. §§ 2-104(1), 2-403(2) (Am. Law Inst. & Unif. Law Comm'n 1977).

In concluding that the Zaretskys are the rightful owners of the Diamond, the district court construed section 2-403(2) as empowering anyone who qualifies as a "merchant" under section 2-104(1) with the ability to pass title to an entrusted good. The court then considered whether, as a matter of law, Khan fit any of the three definitions contained in section 2-104(1). The court determined that whether Khan qualified as a merchant under the first definition—as a person who "deals in goods of the kind"—was a disputed question of fact that it could not resolve, and that the third definition was inapplicable because there was no

---

[7] The parties do not dispute the "entrusting" of the Diamond by WGDC to Khan, nor that Frank Walsh qualifies as a "buyer in ordinary course of business." *See* N.Y. U.C.C. Law §§ 1-201(b)(9), 2-403(3) (defining these terms).

evidence that Khan employed any intermediary. *Zaretsky*, 69 F. Supp. 3d at 390-91 & nn.26, 32. But the district court then decided that Khan, by holding himself out as having knowledge or skill peculiar to jewelry, was a "merchant" under the second definition contained in section 2-104(1), and that the entrustment provision under section 2-403(2) therefore enabled him to transfer all rights to the Diamond to others. *Id.* at 391-92.

We disagree with the district court's construction of section 2-403(2) of the NYUCC. Section 2-403(2) enables a merchant to transfer rights to an entrusted good only if the person is a "merchant" who "deals in goods of that kind," in this case diamonds or other high-end jewelry. This entrustment provision therefore applies to a person who is a "merchant" under section 2-104(1)'s first definition, which itself includes the requirement that the person be one who "deals in" the relevant good. But section 2-403(2) does not necessarily apply to a person who is a "merchant" under the second or third definitions. To qualify as a merchant under those definitions, the person or entity need not "deal[] in goods of that kind," yet that is a prerequisite to being deemed a merchant with the power to transfer rights to entrusted goods to a buyer under section 2-403(2). *See* N.Y. U.C.C. Law § 2-403(2); *cf.* U.C.C. § 2-104 cmt. 2 (restricting the class of merchants

to which section 2-403(2) applies "to a much smaller group than everyone who is engaged in business" and requiring that the merchant have "a professional status as to particular kinds of goods").  Even if, as the district court determined, Khan was a "merchant" under section 2-104(1)'s second definition, the court was also required to find that Khan dealt in goods like the Diamond in order for him to have transferred rights to it under section 2-403(2).

IV.    "Deals In Goods of That Kind"

The district court did not decide whether Khan qualified as a "merchant who deals in goods of that kind" under section 2-403(2).  In the district court's view, the parties had raised a genuine dispute of material fact on that point:

> On the face of it, the Consignment Agreement contemplates the possibility that Khan—subject to the WGDC's approval—will sell jewelry to his clients.  The record suggests, however, that Khan never actually sold the jewelry that he was consigned by WGDC. And it is unclear whether he ever sold jewelry consigned by other jewelers.  The factual dispute, then, comes down to whether "dealing in" jewelry, within the meaning of the UCC, depends on the terms of the Consignment Agreement, or rather the established course of business between the parties.

*Zaretsky*, 69 F. Supp. 3d at 391 n.32 (citations omitted).  Despite what the district court perceived as factual disputes it could not resolve at the summary judgment stage, each side contends on appeal that the record supports a grant of summary judgment in its favor.

The threshold question is: What is required to establish that a person "deals in goods of that kind"? The parties, unsurprisingly, disagree. According to WGDC, a person who "deals in goods of that kind" is a person who is regularly engaged in buying or selling goods like those at issue. Appellant's Br. at 21. The Zaretskys, though, maintain that buying or selling certain goods is not the only way to qualify as a person who "deals." In their view, a sale, although sufficient, is not a necessary requirement to be a person who "deals in goods of that kind"; a person who otherwise "transact[s] business" within a particular industry may also qualify. Appellees' Br. at 15, 19-20.

The New York Court of Appeals has not provided definitive guidance on this question. The weight of persuasive authority, however, strongly indicates that the Court of Appeals would conclude that a merchant who "deals in goods of that kind" is one who regularly sells those goods.

We first consult case law from New York's Appellate Division, which provides a "helpful indicator[] of state law." *DiBella v. Hopkins*, 403 F.3d 102, 113 (2d Cir.), *cert. denied*, 546 U.S. 939 (2005). Indeed, "[w]e are bound . . . to apply the law as interpreted by New York's intermediate appellate courts['] [relevant cases] unless we find persuasive evidence that the New York Court of Appeals,

which has not ruled on th[e] issue, would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

In *Town of Sullivan v. Sanford Fire Apparatus Corp.*, 185 A.D.2d 425, 585 N.Y.S.2d 613 (3d Dep't 1992), the Third Department concluded that a person must regularly sell the particular goods in question to be deemed "a merchant who deals in goods of that kind," *id.* at 426, 585 N.Y.S.2d at 614. In that case, the plaintiff ordered a customized fire rescue vehicle from the defendant, which obtained the chassis to build the vehicle from a third party. *Id.* at 425, 585 N.Y.S.2d at 614. The third party retained ownership over the chassis, but delivered the chassis to the defendant. *Id.* When the defendant went out of business, the chassis was repossessed and resold, and the plaintiff filed suit to acquire title to it. *Id.* The Third Department held that the defendant was not a merchant who dealt in goods like the chassis, and so had not passed title to it, because the defendant "was not in the business of *selling* chassis" and "only manufactured fire rescue vehicles using chassis obtained from other sources." *Id.* (emphasis added). In reaching this conclusion, the court equated "deal[ing] in goods of that kind," N.Y. U.C.C. Law § 2-403(2), with "selling goods of that kind,"

*see id.* § 1-201(b)(9),[8] a phrase which forms part of the definition of the term "buyer in ordinary course of business,"[9] *see Town of Sullivan*, 185 A.D.2d at 425-26 & n.1, 585 N.Y.S.2d at 614 & n.1.

The Appellate Division's interpretation finds support in a case from our sister circuit, which has concluded that "the phrase 'deals in goods' is to be construed as one who is engaged regularly in selling goods of the kind." *Toyomenka, Inc. v. Mount Hope Finishing Co.*, 432 F.2d 722, 727 (4th Cir. 1970) (collecting supporting authority); *see also, e.g., Prenger v. Baker*, 542 N.W.2d 805, 808 (Iowa 1995) ("The requirement that the party 'deals in goods of that kind' is generally interpreted to mean one who is engaged in regularly selling goods of the kind at issue." (citing *Toyomenka*, 432 F.2d at 727)); *see also Indep. News Co. v. Williams*, 293 F.2d 510, 513 (3d Cir. 1961) (concluding that a wholesaler qualified as a merchant who dealt in comics because he regularly sold them); *cf. Gallagher v. Unenrolled Motor Vessel River Queen (Hull No. A-681 84)*, 475 F.2d 117, 118-19 (5th Cir. 1973) (affirming district court's conclusion that a defendant who

---

[8] Subsequent changes to the NYUCC moved the definition of "buyer in ordinary course of business" to section 1-201*(b)*(9) (as opposed to section 1-201(9), as referenced in the *Town of Sullivan* decision).  *See* N.Y. U.C.C. Law § 1-201(b)(9).

[9] That the entrusted merchant can only transfer rights to a "buyer in ordinary course of business" reinforces this comparison.  *See* N.Y. U.C.C. Law § 2-403(2).

regularly rented stalls to boat owners did not pass title under the Texas equivalent of UCC section 2-403(2) when he sold a customer's boat, inasmuch as the defendant's rental business did not render him a merchant who deals in boats).

The decisions the Zaretskys offer in support of their broader theory that a person can "deal" without regularly selling a particular good are inapposite. They discuss: (1) UCC provisions pertaining to merchants that are unrelated to section 2-403(2), *see Brown v. Mitchell-Innes & Nash, Inc.*, No. 06 Civ. 7871(PAC), 2009 WL 1108526, at *4-7, 2009 U.S. Dist. LEXIS 35081, at *12-15, *18-20 (S.D.N.Y. Apr. 24, 2009) (assuming the defendants were merchants to decide if they, in line with the higher "good faith" standard imposed on merchants under section 2-103(1)(b) of the NYUCC, could be considered buyers in the ordinary course of business); *Nat'l Microsales Corp. v. Chase Manhattan Bank, N.A.*, 761 F. Supp. 304, 306 (S.D.N.Y. 1991) (deeming the defendant to be a merchant for purposes of section 2-201 of the NYUCC, pertaining to the statute of frauds); *Pecker Iron Works, Inc. v. Sturdy Concrete Co.*, 96 Misc. 2d 998, 1001-02, 410 N.Y.S.2d 251, 253-54 (N.Y. Civ. Ct. 1978) (same); (2) putative merchants who regularly sold the type of goods at issue, *see Interested Lloyd's Underwriters v. Ross*, No. 04 Civ.

4381(RWS), 2005 WL 2840330, at *4, 2005 U.S. Dist. LEXIS 25471, at *11-12 (S.D.N.Y. Oct. 28, 2005) (noting that a merchant is a person "in the business of selling goods of that kind," and finding that the entrustee met this definition under section 2-403(2)); *Graffman v. Espel*, No. 96 CIV. 8247(SKW), 1998 WL 55371, at *4, 1998 U.S. Dist. LEXIS 1339, at *13-14 (S.D.N.Y. Feb. 9, 1998) (similar), *aff'd sub nom. Graffman v. Doe*, 201 F.3d 431 (2d Cir. 1999) (unpublished non-precedential opinion); or (3) instances where the court accepted the parties' representation that the relevant entities were merchants, without addressing whether the entities dealt in the goods at issue, *see Davis v. Carroll*, 937 F. Supp. 2d 390, 422 (S.D.N.Y. 2013). These inapposite decisions do not persuade us that a person who "deals in goods of that kind" is not limited to one who regularly sells that type of good.

V.    Khan Did Not "Deal in" Diamonds or Similar Goods

This appeal turns on whether Khan regularly sold the kind of goods at issue in this case: diamonds or other high-end jewelry. *See Prenger*, 542 N.W.2d at 808 (dealing in "goods of that kind" means "regularly selling goods *of the kind at issue*" (emphasis added)); 3A David Frisch, *Lawrence's Anderson on the Uniform Commercial Code* § 2-403:73 (3d ed. 2015) ("[T]he entrustee must be a person who

deals in goods *of the kind that are entrusted* to him or her." (emphasis added)).

Because the Zaretskys have submitted no material evidence that Khan regularly conducted such sales, we conclude that WGDC is entitled to summary judgment.

The record supports WGDC's contention that Khan never sold any of the diamonds WGDC consigned to him. *See* J.A. 326 ¶ 32. The terms of the Consignment Agreement denied Khan any independent authority to sell the Diamond and specified that a sale could only occur if he received a written invoice from WGDC, J.A. 338, which WGDC did not provide to him. There is also no record evidence of Khan's participation in any specific sale of WGDC's jewelry. The only evidence bearing on Khan's potential involvement in selling other diamonds or other high-end jewelry is his own declaration, which WGDC urges us to ignore because it was "made by a convicted felon and habitual liar who has fled to Dubai (and who[m] the WGDC had no ability to depose)." Appellant's Br. at 13 n.4. Even considering the contents of Khan's declaration nonetheless, the Zaretskys have not raised a triable issue of fact as to whether Khan regularly sold diamonds or similar items.

The Khan declaration does no more than identify two types of consignment agreements pertaining to his relationships with jewelers; it does not

contain any statement of facts supporting his regular sale of diamonds or other high-end jewelry. As described in the declaration, neither type of consignment agreement presents a genuine issue for trial as to whether Khan dealt in the relevant goods for purposes of section 2-403(2). Khan does not state that he executed any sales of jewelry to "prospective purchasers" under the first type of agreement (which appeared only to allow him to dress his clients with the consigned item). *See* J.A. 386-87 ¶ 4. Similarly, the declaration does not address Khan's engagement in regular sales under the second kind of agreement (which provided for commission if a client, following Khan's introduction to the consignor, purchased the consigned item). *See id.* at 387 ¶ 5. At most, Khan acted as a go-between under this second type of agreement, not as a seller. Moreover, it does not follow from the fact that Khan's celebrity clients expressed "[o]n multiple occasions" an interest in purchasing the consigned jewelry under the second type of agreement that any sales of these items ultimately occurred. The Zaretskys cannot, by relying on such conclusory or vague statements, defeat WGDC's motion. *See Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

We further conclude that, under our understanding of the applicable substantive law, the Zaretskys need not be afforded a chance to supplement the

record with additional evidence.[10]  Both parties had ample opportunity to present their strongest evidence during the summary judgment proceedings as to whether Khan is "a merchant who deals in goods of that kind" under section 2-403(2).  The type of supporting evidence the parties could offer to this effect is not affected by the governing standards as we have described them because the determinative issue—whether Khan "deals in" diamonds or similar goods—is the same.  We see no need to remand to develop the record further where, as here, the Zaretskys obtained a declaration from Khan which "affirm[ed] and clarif[ied] the facts and circumstances surrounding [his] business and consignment relationships with [WGDC] as well as several other high end jewelers and jewelry designers from approximately 1994 through 2003."  Khan Decl., Nov. 7, 2014, J.A. 386 ¶ 1. *Cf. Potenze v. N.Y. Shipping Ass'n*, 804 F.2d 235, 239 (2d Cir. 1986) ("[R]evers[ing] the district court's grant of summary judgment and . . . grant[ing] summary judgment for the nonmoving party . . . is appropriate when

---

[10] In *American Plastic Equipment, Inc. v. CBS Inc.*, 886 F.2d 521 (2d Cir. 1989), we remanded for further development of the record to determine if the defendant qualified as a merchant under the NYUCC, *id.* at 527-28.  However, that case dealt with the "merchants' exception" to the statute of frauds, section 2-201(2).  Further, remand was more appropriate in that case because the plaintiff had not had any opportunity to respond to the statute of frauds defense, and we nonetheless indicated our conviction that "[s]urely no jury would have any difficulty concluding that [the defendant] . . . [could] be considered a merchant under § 2-201(2)." *Am. Plastic Equip.*, 886 F.2d at 527-28.

the issues have been fully developed, the opponent has had a full and fair opportunity to litigate the question, and no new facts would be developed on remand.").

Finally, we note that our conclusion is consistent with the New York Court of Appeals' assessment of the underlying purpose of section 2-403(2). It is, the court tells us, "designed to enhance the reliability of commercial sales by merchants (who deal with the kind of goods sold on a regular basis) while shifting the risk of loss through fraudulent transfer to the owner of the goods, who can select the merchant to whom he entrusts his property." *Porter v. Wertz*, 53 N.Y.2d 696, 698, 421 N.E.2d 500, 500-01 (1981). It would be inappropriate in light of that principle, we think, to shift the risk of loss to WGDC here: Absent evidence that Khan regularly sold diamonds or other high-end jewelry, WGDC had little reason to suspect that he would do so once the company entrusted the Diamond to him.

VI.    Other Arguments

The Zaretskys present two final arguments in an effort to demonstrate their rightful ownership of the Diamond, neither of which has merit. They first assert that the consignment was a "transaction of purchase" under section

2-403(1) through which Khan obtained voidable title to the Diamond, and that all subsequent purchasers of the Diamond would hold valid title to it. Second, they contend that the doctrine of laches prevents WGDC's recovery of the Diamond.

*Section 2-403(1)*

Section 2-403(1) provides in pertinent part: "A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . the delivery was procured through fraud punishable as larcenous under the criminal law." N.Y. U.C.C. Law § 2-403(1)(d). The Fifth Circuit has defined the phrase "transaction of purchase" contained in Alabama's version of the UCC to be

> generally limited to those situations in which the party who delivered the goods to the subsequent seller intended, however misguidedly, that the seller would become the owner of the goods. Thus, the con artist who fraudulently induces a manufacturer to deliver goods to him by means of a forged check has voidable title because he obtained delivery through a transaction of purchase, even though the defrauded manufacturer could bring criminal charges against the con artist; under section 2-403(1), the defects in the con artist's voidable title would be cured by a sale to a good faith purchaser for value, and the good faith purchaser would obtain clear title, free from any claims of the manufacturer. But if the con artist merely converts the goods to his own use after having obtained possession of them in some manner other than through a transaction of purchase, he does not have even voidable title;

instead, he has void title, and cannot pass good title even to a good faith purchaser for value.

*Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 268 (5th Cir. 1981) (applying Alabama law); *see also* 1 White, Summers, & Hillman, *Uniform Commercial Code* § 4:33 (6th ed.) ("In order to be a party to the transaction [of purchase], the seller must not just have initiated the transaction by making a delivery but must have been involved in the conclusion by receiving the relevant payment.").  We agree.

Applying that definition to the case at bar, no "transaction of purchase" occurred because it is clear from the record that WGDC never intended for Khan to become the owner of the Diamond.  Under the express terms of the Consignment Agreement, Khan "acquire[d] no right or authority to sell, pledge, hypothecate or otherwise dispose of the merchandise, or any part thereof."  J.A. 338.  Because Khan obtained possession of the Diamond by that strict consignment, and not by a "transaction of purchase," he could not pass good title to subsequent bona fide purchasers for value under section 2-403(1).  *See Am. Standard Credit*, 643 F.2d at 268; *see also Alexander v. Spanierman Gallery, LLC*, 64 A.D.3d 487, 487, 883 N.Y.S.2d 492, 493 (1st Dep't 2009) (deciding that the delivery

of a sculpture "only for the purpose of its authentication" was not a transaction of purchase).

The Zaretskys seek to avoid this result by asserting that a "transaction of purchase" nonetheless took place under one of three theories.

First, they contend that because WGDC voluntarily delivered the Diamond to Khan, the definition of "purchase" has been satisfied. A "purchase" under the NYUCC, however, must not only be "voluntary," but it must also "creat[e] an interest in property." N.Y. U.C.C. Law § 1-201(b)(29). As the Zaretskys recognize, the Consignment Agreement "provided no rights to Khan." Appellees' Br. at 25.

Second, the Zaretskys appear to rely on section 2-401(1) of the NYUCC to demonstrate that WGDC retained a "security interest" in the Diamond upon consignment, and that the transfer therefore qualified as a "purchase" under the NYUCC because this term expressly encompasses security interests. *See* N.Y. U.C.C. Law § 1-201(b)(29). However, section 2-401(1) has no relevance to this issue because it addresses a contract for sale of goods to a buyer. There was no such contract here.

Third, the Zaretskys contend that the consignment amounted to a "conditional" sale of the Diamond because the Consignment Agreement gave Khan the ability to sell the merchandise to his clients, subject to WGDC's approval and separate invoicing of the item. The Zaretskys cite *Atlas Auto Rental Corp. v. Weisberg*, 54 Misc. 2d 168, 170, 281 N.Y.S.2d 400, 403 (N.Y. Civ. Ct. 1967) for the proposition that, "[i]f passage of title is dependent upon the performance of some condition subsequent, this is a voidable title," and ensuing transfers of that title to bona fide purchasers are valid. As WGDC points out, however, passage of title to the Diamond did not depend on a "condition subsequent"; rather, WGDC possessed unilateral authority under the Consignment Agreement to determine whether a sale of the Diamond would occur.

Inasmuch as Khan did not obtain the Diamond through a "transaction of purchase," the Zaretskys' attempt to shoehorn their case within the confines of section 2-403(1) fails.

*A.    Laches*

Lastly, the Zaretskys assert that the doctrine of laches applies in light of WGDC's failure to exercise reasonable diligence in locating the Diamond, in that

WGDC neither pursued a civil action against Khan nor requested subsequent searches of the GIA's database for the Diamond.

Although the district court saw no need to address the laches defense directly, it did indicate its view that the defense would be unavailable here. We agree with that conclusion and the district court's reasons for it. Under New York law,

> [l]aches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. The essential element of this equitable defense is delay prejudicial to the opposing party[.]

*Capruso v. Vill. of Kings Point*, 23 N.Y.3d 631, 641, 16 N.E.3d 527, 532, 992 N.Y.S.2d 469, 474 (2014) (citations omitted) (quoting *Matter of Schulz v. State of New York*, 81 N.Y.2d 336, 348, 615 N.E.2d 953, 957, 599 N.Y.S.2d 469, 473 (1993)). The Zaretskys have not shown that WGDC unreasonably delayed its search for the Diamond. As the district court recognized, "[a]fter the disappearance of the diamond, WGDC hired an investigator, notified the police, and reported the diamond stolen to the GIA." *Zaretsky*, 69 F. Supp. 3d at 389 n.15. Nor have the Zaretskys suffered prejudice as a result of any such delay because "it is not clear

that greater diligence" by WGDC "would have made a difference." *Id.* (internal

quotation marks omitted). As the district court correctly observed:

> Once [Louis E.] Newman[, Inc.,] came into possession of the diamond—less than a month after WGDC lost it—seeking replevin against Khan would have been futile. And once the Walshes purchased the diamond, a replevin action . . . would have posed to [the Zaretskys], or to [the Walshes], exactly the same risk that the action poses today—the prospect of being stripped of valuable property that was acquired in good faith.

*Id.* Thus, laches does not bar WGDC's recovery of the Diamond here.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED with directions to the district court to enter an order granting summary judgment in favor of the defendant, WGDC.